No. 20-1837

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

PATRICIA STARK,

Plaintiff-Appellant,

V.

JOHNSON & JOHNSON and
ETHICON, INC.                     Defendants-Appellees.

On Appeal from the United States District Court for the Northern
District of Illinois, No. 1:18-cv-06609
The Honorable Mary W. Rowland, Presiding

## BRIEF OF DEFENDANTS-APPELLEES
## JOHNSON & JOHNSON AND ETHICON, INC.

Susanna M. Moldoveanu
Amy M. Pepke
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7339
(901) 680-7324
susanna.moldoveanu@butlersnow.com
amy.pepke@butlersnow.com

Charles A. Byrd
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone: (601) 985-4492
chad.byrd@butlersnow.com

*Attorneys for Defendants-Appellees*
*Johnson & Johnson and Ethicon, Inc.*

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 20-1837

Short Caption: Patricia Stark v. Johnson & Johnson, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Johnson & Johnson

Ethicon, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Costello, McMahon, Burke & Murphy LTD; Tucker Ellis LLP; Butler Snow LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Appellant Johnson & Johnson has no parent corporations and no corporation owns 10% or more of its stock.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Appellant Ethicon, Inc. is a wholly-owned subsidiary of Johnson & Johnson.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Susanna M. Moldoveanu    Date: May 20, 2020

Attorney's Printed Name: Susanna M. Moldoveanu

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑    **No** ☐

Address: Butler Snow LLP, 6075 Poplar Avenue, Suite 500

Memphis, TN 38119

Phone Number: 901-680-7339    Fax Number: 901-680-7201

E-Mail Address: susanna.moldoveanu@butlersnow.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-1837

Short Caption: Patricia Stark v. Johnson & Johnson, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Johnson & Johnson

Ethicon, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Costello, McMahon, Burke & Murphy LTD; Tucker Ellis LLP; Butler Snow LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Appellant Johnson & Johnson has no parent corporations and no corporation owns 10% or more of its stock.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Appellant Ethicon, Inc. is a wholly-owned subsidiary of Johnson & Johnson.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Amy M. Pepke                    Date: May 20, 2020

Attorney's Printed Name:  Amy M. Pepke

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  Butler Snow LLP, 6075 Poplar Avenue, Suite 500

Memphis, TN 38119

Phone Number: 901-680-7324                    Fax Number:  901-680-7201

E-Mail Address: amy.pepke@butlersnow.com

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-1837

Short Caption: Patricia Stark v. Johnson & Johnson, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Johnson & Johnson

    Ethicon, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Costello, McMahon, Burke & Murphy LTD; Tucker Ellis LLP; Butler Snow LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Johnson & Johnson has no parent corporation and no corporation owns more than 10% of its stock.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Ethicon, Inc. is a wholly owned subsidiary of Johnson & Johnson

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Charles A. Byrd    Date: August 12, 2020

Attorney's Printed Name:  Charles A. Byrd

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  Butler Snow LLP, 1020 Highland Colony Parkway, Suite 1400

    Ridgeland, Mississippi 39157

Phone Number: (601) 985-4492    Fax Number:  (601) 985-4500

E-Mail Address: chad.byrd@butlersnow.com

rev. 12/19 AK

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURES ................................................................................. i

TABLE OF CONTENTS ................................................................................... iv

TABLE OF AUTHORITIES ............................................................................. vi

STATEMENT REGARDING ORAL ARGUMENT ...................................... x

APPELLEES' RESPONSE TO APPELLANT'S JURISDICTIONAL STATEMENT ............... xi

STATEMENT OF THE ISSUE ......................................................................... 1

STATEMENT OF THE CASE ......................................................................... 2

    I.   Course of proceedings and disposition below. ............................................. 2

    II.   Statement of facts. ....................................................................................... 3

        A.  2006-2007:  Appellant seeks treatment for stress urinary incontinence. ........................ 3

        B.  2007-2008:  Appellant seeks additional treatment after her TVT-O procedure "did not work." ................................................ 4

        C.  2008: Appellant is implanted with TVT and discovers that her TVT-O implant eroded into her urethra. .......................................... 5

        D.  2015: Appellant undergoes additional surgery to remove more mesh that eroded into her urethra. .......................................... 7

        E.  2018: Appellant files suit after a friend recommends that she consult with an attorney. ................................................. 7

SUMMARY OF THE ARGUMENT ................................................................ 9

STANDARD OF REVIEW ............................................................................. 11

ARGUMENT .................................................................................................. 12

    I.   The District Court correctly held that all of Appellant's claims are barred by the statute of limitations. ................................................ 12

        A.  Appellant's claims accrued more than two-years before she filed suit. ......................... 13

B.   There is no merit to Plaintiff's alleged "factual disputes" concerning the accrual of her claim. ................................................................................................. 18

     i.   Appellant's claims accrued when she should have known of a connection between her TVT-O implant and her injuries, not when she became aware of Defendants' alleged tortious conduct. ..................................................................... 18

     ii.   The District Court did not improperly weigh the facts or apply an incorrect analysis in granting summary judgment to Appellees. ............................ 23

II.   Appellant does not challenge the District Court's conclusion that her strict liability claims are barred by Illinois's statute of repose. ........................................................... 28

CONCLUSION .................................................................................................... 30

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ...................................................... 31

CERTIFICATE OF SERVICE ................................................................................ 32

## TABLE OF AUTHORITIES

**Cases**

*Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*,
860 F.3d 489 (7th Cir. 2017) .................................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................. 11

*Anson v. American Motors Corp.*,
747 P.2d 581 (Ariz. Ct. App. 1987) ..................................................... 21

*Carlson v. Fish*,
21056 IL App (1st) 140526, 391 Ill.Dec. 728, 31 N.E. 404 .................. 27

*Carroll v. Lynch*,
698 F.3d 561 (7th Cir. 2012) ................................................................ 11

*Castello v. Kalis*,
352 Ill.App.3d 736, 287 Ill.Dec. 815, 816 N.E.2d 782 (2004) ......... 19, 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................. 11

*Curry v. A.H. Robins Co.*,
775 F.2d 212(7th Cir. 1985) ................................................................ 20

*Curtis v. Mentor Worldwide, LLC*,
543 F. App'x 901 (11th Cir. 2013) ......................................... 12, 20, 25

*Cutter v. Ethicon, Inc.*,
No. 5:19-433-DCR, 2020 WL 109809 (E.D. Ky. Jan. 9, 2020) ............ 16

*Dohra v. Alcon (Puerto Rico), Inc.*,
No. 92 C 2624, 1994 WL 71449 (N.D. Ill. Mar. 3, 1994) .................... 28

*Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*,
955 F.3d 632 (7th Cir. 2020) ................................................................ 11

*Foreman v. Boston Scientific Corp.*,
No. 2:13-CV-15591, 2015 WL 1276714 (S. D. W. Va. Mar. 19, 2015) ................ 21

*Freire v. Am. Med. Sys., Inc.*,
No. 2:13-cv-9079, 2019 WL 1575187 (S.D. W. Va. Apr. 11, 2019) .............. 12, 15, 16, 19

*George v. Walker*,
 535 F.3d 535 (7th Cir. 2008)..................................................................... 11

*Golla v. Gen. Motors Corp.*,
 167 Ill.2d 353 (1995)............................................................................. 13, 18

*Heredia v. O'Brien*,
 2015 IL App (1st) 141952, 393 Ill.Dec. 63 N.E.3d 807............................ 27

*Hermitage Corp. v. Contractors Adjustment Co.*,
 166 Ill. 2d 72, 85 (1995)........................................................................... 13

*Hoffman v. Orthopedic Sys., Inc.*,
 765 Ill.App.3d 1004 (2002)........................................................................ 20

*In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*,
 2013 WL 503074 (M.D. Ga. Feb. 11, 2013)............................................... 25

*In re Mentor Corp.*,
 No. 4:13-cv-359 (Rinaldi), 2016 WL 4732931 (M.D. Ga. Sept. 9, 2016)........ 22

*In re Mirena IUD Prods. Liab. Litig.*,
 No. 13-MD-2434 (CS), 2015 WL 144214 (S.D.N.Y. Jan. 9, 2015)............ 22

*Jolly v. Eli Lilly & Co.*,
 44 Cal.3d 1103 (1988)................................................................................ 21

*Kennedy v. Ethicon, Inc.*,
 No. 5:20-cv-00185, 2020 4050459 (E.D. Pa. July 20, 2020)..................... 16

*Knox College v. Celotex Corp.*,
 88 Ill.2d 407 (1981)................................................................................... 19

*LaManna v. G.D. Searle and Co.*,
 204 Ill.App.3d 211, 149 Ill.Dec. 474, 561 N.E.2d 1170 (1990) ............... 26

*Mack v. A.H. Robins Co.*,
 573 F. Supp. 2d 149 (D. Ariz. 1983)......................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) .................................................................................. 11

*MC Baldwin Fin. Co. v, DiMaggio, Rosario & Veraja, LLC*,
 364 Ill.App.3d 6 (Ill. App. Ct. 2006)........................................................ 12

*Minzel v. Ethicon, Inc.*,
 8:20CV13, 2020 WL 3128748 (D. Neb. June 12, 2020) ........................... 16

*Mitsias v. I-Flow Corp.*,
  2011 IL App. (1st) 101126 ........................................................................ 20, 26

*Nat'l American Ins. Co. v. Artisan and Truckers Ins. Co.*,
  796 F.3d 717 (7th Cir. 2015) ................................................................... 11

*Nolan v. Johns–Manville Asbestos*,
  85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981) ...................... 20, 22, 25

*Olson v. Owens-Corning Fiberglas Corp.*,
  198 Ill. App. 3d 1039 , 556 N.E.2d 716 (1990) ...................................... 28

*Orso v. Bayer Corp.*,
  No. 04 C 0114, 2009 WL 249235 (N.D. Ill. Feb. 2, 2009) ..................... 12, 15, 23

*Sanchez v. Boston Scientific Corp.*,
  No. 2:12-CV-05762, 2014 WL 202787 (S.D.W. Va. Jan. 17, 2014) ............... 21

*Smith v. C.R. Bard, Inc.*,
  No. 2:16-CV-11817, 2018 WL 715448 (S.D.W. Va. Feb. 5, 2018) ............... 22

*Staub v. Boston Scientific Corp.*,
  No. 2:13-CV-14904, 2015 WL 1198545 (S.D.W. Va. Mar.16, 2015)............... 21

*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*,
  61 Ill.2d 129, 334 N.E.2d 160 (1975) ...................................................... 26

*Trask-Morton v. Motel 6 Operating L.P.*,
  534 F.3d 672(7th Cir. 2008) ................................................................... 11

*Wallace v. Kato*,
  549 U.S. 384 (2007) ................................................................................ 12, 20

*Witherell v. Weimer*,
  421 N.E.2d 869 (Ill. 1981) ...................................................................... 12, 16, 17

*Young v. McKiegue*,
  303 Ill.App.3d 380 (1999)...................................................................... 20

*Zimmerman v. Abbott Labs., Inc.*,
  189 Ill. App. 3d 744, 545 N.E.2d 547 (1989) ....................................... 28

**Statutes**

735 Ill. Comp. Stat. Ann. § 5/13-202........................................................ 2, 12

735 Ill. Comp. Stat. Ann. § 5/13-213(d) ................................................................................. 2, 28

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................................... 11

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case involves the application of undisputed facts to well-settled law. The facts and legal arguments are adequately presented in Appellant's and Appellees' briefs, and oral argument is therefore unnecessary to aid the decisional process.

## APPELLEES' RESPONSE TO APPELLANT'S JURISDICTIONAL STATEMENT

Pursuant to Circuit Rule 28(b), Appellees submit that the Jurisdictional Statement on page 1 of Appellant's Brief and the Amended Jurisdictional Statement filed by Appellant at this Court's instruction on August 20, 2020 are complete and correct.

## STATEMENT OF THE ISSUE

Whether the District Court properly granted summary judgment to Appellants under Illinois's two-year statute of limitations, where the undisputed facts establish that as early as May 2008, and by November 2015 at the very latest, Appellant knew or should have known that her injuries were caused by her TVT-O pelvic mesh implant, yet she did not sue until September 2018.

## STATEMENT OF THE CASE

**I.      Course of proceedings and disposition below.**

Plaintiff-Appellant Patricia Stark filed this lawsuit against Ethicon, Inc. and its parent corporation Johnson & Johnson (collectively "Appellants") on September 27, 2018 in the United States District Court for the Southern District of Illinois, Eastern Division.   [ECF No. 1]. Appellant's claims originally arose from her surgical implantation with two pelvic mesh devices manufactured by Ethicon, Inc:  TVT Obturator ("TVT-O") and TVT.   [*Id.* ¶ 4].   Appellant later abandoned her claims relating to TVT, leaving the TVT-O as the only device at issue.   [ECF No. 67 at 1].

On August 22, 2019, Appellees moved for summary judgment on all of Appellant's claims, arguing, *inter alia*, that the claims were barred by Illinois's two-year statute of limitations for personal injury actions, 735 Ill. Comp. Stat. Ann. § 5/13-202.   [ECF Nos. 58-60].   Appellees contended that Appellant's claims accrued on May 21, 2008, when a doctor removed a portion of Appellant's TVT-O implant that had eroded into her urethra and informed her that the mesh had dissected her urethra.   [ECF No. 60 at 4-5].   Alternatively, Appellees argued that Appellant's claims accrued, at the latest, on November 13, 2015, when she underwent a second surgery to attempt to remove another piece of mesh that had eroded into her urethra.   [*Id.* at 5].   Additionally, Appellees argued that Appellant's strict liability claims were barred by Illinois's eight-year statute of repose, 735 Ill. Comp. Stat. Ann. § 5/13-213(d).   [*Id.* at 6].

In response to Appellees' summary judgment motion, Appellant admitted all the facts set forth in Defendants Statement of Undisputed Facts but claimed that the statute of limitations did not begin to run on her claims until March 2018, when a friend recommended that she consult an attorney specializing in pelvic mesh litigation.   [ECF. No. 67 at 7]; [ECF No. 68 at 1-8].   She

argued that she had no reason to know that her TVT-O implant was defective before 2018 because none of her doctors had told her that the mesh was defective. [ECF No. 67 at 5].

On April 20, 2020, the District Court granted Appellee's motion for summary judgment. [ECF No. 73]. After reviewing the undisputed facts concerning Appellant's TVT-O implant and subsequent treatment, the District Court concluded that Appellant should have known that her injuries were "directly related" to the TVT-O by May 2008 and no later than November 2015. [*Id.* at 10]. At that point, Appellant had a duty to investigate whether she had a cause of action, and the statute of limitations for her claims expired no later than November 2017. [*Id.* at 10-11]. Because Appellant did not file her Complaint until September 2018, the District Court held that her claims were time-barred. [*Id.*]. The District Court also held that Appellant's strict liability claims were barred by the statute of repose, which expired in 2015, eight years after her 2007 TVT-O implant surgery. [*Id.* at 13 n. 9].

Following the District Court's entry of judgment in Appellee's favor [ECF No. 74], Appellant timely initiated this appeal. [ECF No. 75].

## II.    Statement of facts.

### A.    2006-2007:  Appellant seeks treatment for stress urinary incontinence.

Appellant began experiencing urinary leakage after giving birth to twins in 2000. [ECF No. 59-2 at 4, A.20]. On December 21, 2006, Appellant's primary physician and OB-GYN Dr. Andrew Roth performed tests on her bladder, the results of which were consistent with stress urinary incontinence. [ECF No. 59-1 at 3]. Dr. Roth described stress urinary incontinence as the "[l]oss of urine with a cough or sneeze or an increase in intraabdominal pressure." [*Id.*].

On February 15, 2007, Dr. Roth surgically implanted Appellant with Ethicon's TVT-O pelvic mesh medical device to treat her stress urinary incontinence. [ECF No. 34 ¶¶ 1, 4]. Prior to the implantation surgery, Dr. Roth offered Appellant more conservative treatment options, but

she chose the TVT-O because she wanted a more permanent solution to her condition.  [*Id.* at 4-5].

**B.    2007-2008:  Appellant seeks additional treatment after her TVT-O procedure "did not work."**

Following her TVT-O implant surgery, Appellant experienced pain and continued incontinence, and she believed that the procedure had not worked:

Q. Do you remember having a general feeling about whether the surgery worked or it didn't work?

**A. I had a general feeling it didn't work.**

Q. That it did not work?

A. Right.

Q. Do you know **when you came to that feeling that the surgery did not work?**

A. I don't remember.

Q. Was it sometime **-- is it fair to say it was sometime before you had the surgery with Dr. Elser in May 2008**?

A. **That's what precipitated that surgery**.

Q. Let me ask my question again because it is a bit different. **Did you come to the conclusion that Dr. Roth's surgery did not work at some point before you had the procedure by Dr. Elser?**

A. **Yes, yes.**

[ECF No. 59-2 at 24-25, A.39-40] (emphasis added).  Appellant shared this belief with Dr. Roth. [*Id.* at 25, A.40] ("Q. Do you remember speaking with Dr. Roth, [ ] sharing that opinion with him that you felt that the surgery did not work? A. Yes.").  Dr. Roth referred Appellant to Dr. Denise Elser, a urogynecologist, to address her complaints.  [ECF 59-2 at 26, A.41]; [ECF No. 59-1 at 7-8].

**C.** **2008: Appellant is implanted with TVT and discovers that her TVT-O implant eroded into her urethra.**

Appellant first saw Dr. Elser on March 5, 2008. [ECF No. 59-2 at 26-27, A.41-42]; [ECF No.59-3 at 3, A.48]. In her patient questionnaire, Appellant identified a "failed bladder lift," referring to Dr. Roth's 2007 TVT-O implant surgery, as one of her reasons for visiting Dr. Elser :

> Q. [ ] This is dated March 5th, 2008. Is that about the time when you first saw Dr. Elser?
>
> A. I don't remember.
>
> Q. If the medical records suggest that it is, you wouldn't disagree with that, right?
>
> A. No, no.
>
> Q. Towards the top half it says, "What is the reason for your visit?" And then there is some writing there. Is that your handwriting?
>
> A. Yes.
>
> Q. Can you read to me what that says.
>
> A. "Urinary incontinence, leakage, **failed bladder lift**, medicine doesn't help, leakage and subsequent odor."
>
> Q. **When you wrote there "failed bladder lift," what were you referring to?**
>
> A. **The surgery Dr. Roth did.**

[ECF No. 59-2 at 27, A.42]; [ECF No. 59-3 at 4-5]. Dr. Elser conducted urodynamic testing on Appellant and determined that she was still experiencing stress urinary incontinence. [ECF No. 59-3 at 6-8]. Dr. Elser also told Appellant that her TVT-O implant "had shifted, it moved." [ECF No. 59-2 at 31, A.43].

On April 9, 2008, Dr. Elser and Appellant discussed the option of implanting Ethicon's TVT pelvic mesh device to treat her continued incontinence. [ECF No. 59-3 at 9, A.49]. Dr. Elser testified that she would have discussed with Appellant the risk of erosion of the mesh and the need

for additional operations to excise portions of the mesh. [*Id.*]. Appellant agreed to the TVT implant and signed a consent form that warned: "When mesh material is used during reconstructive pelvic surgery, there is potential risk of mesh erosion or exposure requiring surgical revision or removal." [*Id.* at 12, A.50].

On May 21, 2008, Dr. Elser surgically implanted Appellant with the TVT device. [ECF No. 34, ¶ 4]. During this procedure, Dr. Elser observed "a portion of sling embedded in the urethral wall that appeared to be from the prior surgery," referring to Dr. Roth's implantation of the TVT-O. [ECF No. 59-3 at 12, A.50]. Dr. Elser removed part of the mesh that was in the urethra and repaired the urethra. [*Id.* at 12-13, A. 50-51]. She did not attempt to remove all of the mesh. [*Id.* at 13, A.51]. Immediately after this procedure, Dr. Elser told Appellant her TVT-O implant had eroded into her urethra, and she also discussed this fact with Appellant at follow-up office visits. [*Id.* at 30-31]. Appellant confirmed these conversations: "Dr. Elser told me that Dr. Roth's mesh implant eroded in my bladder and that caused the mesh to dissect my urethra, so that's why she went in and removed it and put in a new one, because it eroded." [ECF No. 59-2 at 20, A.36].

Appellant continued to experience leakage following her TVT implant and reported this symptom to both Dr. Roth and Dr. Elser. [*Id.* at 32-33]. When Appellant complained to Dr. Elser of urinary incontinence and pelvic pain on February 1, 2010, Dr. Elser discussed with Appellant the possibility of recurrent erosion of the mesh into her urethra as the cause of these symptoms. [ECF No. 59-3 at 14-17]. From her last visit with Dr. Elser on March 11, 2010, until seeing a new physician in August 2015, Appellant's "incontinence was worse than before I had the first surgery, and I felt like everything got worse: pain, the flow, the spasms, the leakage, the smell, waking up at night." [ECF No. 52 at 35-37; *id.* at 38, A.46].

**D.    2015:  Appellant undergoes additional surgery to remove more mesh that eroded into her urethra.**

When Appellant presented to her new physician, Dr. Sandra Valaitis, on August 19, 2015, she continued to complain of overactive bladder, recurrent stress incontinence, and voiding difficulty, and Dr. Valaitis was concerned that another portion of mesh had eroded into the urethra. [ECF No. 59-6 at 4-5].  While performing a cystoscopy associated with an incontinence procedure on October 1, 2015, Dr. Valaitis discovered mesh in Appellant's urethra.  [*Id.* at 9-10].  At an office visit on October 16, 2015, Dr. Valaitis and Appellant decided that Appellant would undergo an outpatient procedure to have this eroded mesh removed.  [*Id.* at 11-13, A.59-61].  However, Dr. Valaitis was ultimately unable to remove the eroded mesh from Appellant's urethra.  [*Id.* at 14].

**E.    2018:  Appellant files suit after a friend recommends that she consult with an attorney.**

In March 2018, Appellant spoke with a friend about her mesh-related complications.  [ECF No. 68 ¶ 52]. Her friend suggested she consult with an attorney who specialized in pelvic mesh litigation.  [*Id.*]. Appellant retained an attorney in June 2018 and filed this lawsuit three months later.  In her Complaint, Appellant alleged that one of the defects in the design of the TVT-O was "the lack of porosity in the mesh resulting in the formation of a scar plate that prohibits tissue in-growth, resulting in mesh contraction, nerve damage, pain and erosion of the mesh into other organs, and failure of the device[.]"  [ECF No. 34, ¶ 26(e)].  Appellant also alleged that Appellees failed to warn physicians of the following risks and complications associated with the device:  (1) "the rate and manner of mesh erosion or extrusion;" (2) "the need for corrective or revision surgery to adjust or remove the Products;" (3) "use of the Products puts the patient at greater risk of requiring additional surgery than feasible available alternatives;" (4) "removal of the Products due to complications may involve multiple surgeries and may significantly impair the patient's quality

of life;" and (5) "complete removal of the Products may not be possible and may not result in complete resolution of complications, including pain[.]"  [*Id.*, ¶ 42(e), (k), (r), (s), (t)].

## SUMMARY OF THE ARGUMENT

This appeal presents a single, straightforward question: was Appellant's lawsuit timely filed as a matter of law? The District Court correctly answered this question in the negative, and therefore granted summary judgment for Appellees.

Under Illinois law, Appellant was required to bring her claims within two years after she knew or reasonably should have known that her injuries were wrongfully caused. Based on its review of the undisputed facts, the District Court determined that Appellant should have possessed this knowledge by November 2015, as by that point she had undergone multiple surgeries to remove portions of the TVT-O mesh that had eroded into her urethra and two doctors had told her that the eroded mesh could be the cause of her other symptoms. Indeed, Appellant identified these very complications in her Complaint as defects of the TVT-O, and there is no question that she was aware of the risk of these complications by November 2015. Therefore, Appellant's Complaint, filed in September 2018, is untimely as a matter of law.

Appellant points to two alleged "disputes" of fact, but the District Court correctly held that neither undermines its conclusion that Appellant's suit is time barred as a matter of law. First, Appellant argues that the statute of limitations did not begin to run until 2018, when a friend recommended that she consult with an attorney who specialized in mesh litigation. Before that point, Appellant contends, she had no reason to file suit because no doctor had told her that her mesh implant was defective. Second, Appellant argues that a factual dispute exists as to whether she acted reasonably in believing that her Ehlers-Danlos Syndrome, a disorder that weakens connective tissue and inhibits wound healing, could have contributed to her injuries. As the District Court correctly recognized, these arguments are inconsistent with Illinois law. The statute of limitations is not tolled until the plaintiff has knowledge of a specific defect in the product or a

specific act of negligence by the defendant. Rather, a claim accrues when the plaintiff, through reasonable diligence, should have become aware of a causal link between her injuries and the product. This knowledge triggers the plaintiff's duty to investigate further to determine whether her injuries are actionable.

Here, the fact that Appellant's doctors did not tell her that her TVT-O implant was defective does not prevent the entry of summary judgment because the undisputed facts show that by November 2015 Appellant had sufficient knowledge of the connection between her injuries and the mesh to conduct further inquiry. Moreover, as Appellant has conceded, no doctor ever told her that Ehlers-Danlos Syndrome was the cause of her injuries; at most, she was informed that this condition could increase the risk of her mesh-related complications by hindering wound healing. Thus, the supposed disputes cited by Appellant are not material to the resolution of the statute-of-limitations issue.

The District Court correctly applied well-established Illinois law to the undisputed facts of this case and concluded that, even viewing the record in the light most favorable to Appellant, her claims were not timely filed. The District Court's summary judgment ruling should be affirmed.

## STANDARD OF REVIEW

This Court reviews the District Court's grant of summary judgment *de novo*. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020). In determining whether summary judgment is proper, this Court "must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008). This Court must affirm the District Court's grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden of production then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). A genuine issue of material fact exists where "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The underlying substantive law governs whether a factual dispute is material: 'irrelevant or unnecessary' factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Thus, a fact is "material" only if it is identified by the law as affecting the outcome of the case. *Nat'l American Ins. Co. v. Artisan and Truckers Ins. Co.*, 796 F.3d 717, 722 (7th Cir. 2015).

For the reasons below, the District Court correctly granted summary judgment to Appellees because Appellant's claims were barred by the statute of limitations as a matter of law.

# ARGUMENT

## I. The District Court correctly held that all of Appellant's claims are barred by the statute of limitations.

The parties agree that Illinois law governs Appellant's claims.  [ECF No. 60 at 2]; [ECF No. 67 at 3].  In Illinois, "[a]ctions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued . . . ."  735 Ill. Comp. Stat. Ann. § 5/13-202.  "A cause of action accrues 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)); *see Orso v. Bayer Corp.*, No. 04 C 0114, 2009 WL 249235, at *2 (N.D. Ill. Feb. 2, 2009) (quoting *MC Baldwin Fin. Co. v, DiMaggio, Rosario & Veraja, LLC*, 364 Ill.App.3d 6 (Ill. App. Ct. 2006)) ("The general rule is that the limitations period begins to run 'when facts exist which authorize the bringing of an action.'").  The question of timeliness may be resolved by the court as a matter of law when only one conclusion can be drawn from the undisputed facts about application of the statute of limitations.  *Witherell v. Weimer*, 421 N.E.2d 869, 874 (Ill. 1981); *see  Amin Ijbara Equity Corp.*, 860 F.3d at 493 (affirming district court's dismissal of action based on Illinois statute of limitations); *Curtis v. Mentor Worldwide, LLC*, 543 F. App'x 901, 903-04 (11th Cir. 2013) (in case involving implantation of surgical sling device, affirming district court's order granting summary judgment based on Illinois statute of limitations); *Freire v. Am. Med. Sys., Inc.*, No. 2:13-cv-9079, 2019 WL 1575187, at *2 (S.D. W. Va. Apr. 11, 2019) (in case involving implantation of a transvaginal surgical mesh, granting summary judgment under the Illinois statute of limitations)

Illinois courts have adopted a "discovery rule" which serves to "postpone the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably

should have known that he has been injured and that his injury was **wrongfully caused**." *Golla v. Gen. Motors Corp.*, 167 Ill.2d 353, 361 (1995) (emphasis added). Appellant bears the burden of showing that her claims were timely filed under the discovery rule, and she has failed to carry this burden. *See Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85 (1995).

### A. Appellant's claims accrued more than two-years before she filed suit.

Applying the proper interpretation of Illinois's discovery rule to this case, the undisputed record shows that Appellant's claims accrued more than two years before she filed suit. The District Court did not err in granting summary judgment to Appellees.

In its Order granting summary judgment to Appellees, the District Court concluded that these facts were undisputed:

- Appellant was aware of her injury shortly after the February 2007 TVT-O implantation surgery, when she had "a general feeling that [the TVT-O surgery] didn't work," and reported her "failed bladder lift" to Dr. Elser;

- Appellant was aware of the injuries from the eroded TVT-O mesh immediately after the May 21, 2008 surgery, when Dr. Elser informed her of the eroded mesh removed from her urethra;

- At an office visit in February 2010, Dr. Elser again discussed with Appellant the possibility of mesh erosion into the urethra as the cause of her symptoms;

- Appellant was aware of continued complications from the eroded mesh in October and November 2015, when Dr. Valaitis saw strands of mesh in Appellant's urethra, informed her of the eroded mesh, and performed an additional surgical procedure in an unsuccessful attempt to remove the eroded mesh.

[ECF No. 73 at 9-10]. Based on these undisputed facts, the District Court concluded that by November 2015 at the very latest, Appellant had sufficient knowledge of the connection between her injuries and the TVT-O to conduct a further inquiry:

Stark knew the continued pain and incontinence were **directly related** to the eroded mesh. Arguably, Stark knew or should have known that her injury was wrongfully

caused shortly after the 2007 surgery when she continued to experience pain and incontinence, and certainly after the 2008 surgery when Dr. Elser found eroded mesh in the urethra. **At the latest, Stark knew after her procedure with Dr. Valaitis in November 2015—which was the second time a physician attempted to remove the eroded mesh—that her injuries were wrongfully caused.** At that point, the burden was on Stark to "inquire further as to the existence of a cause of action."

[*Id.* at 11] (emphasis added). The District Court's conclusion is supported by the record and the established Illinois law discussed above.

It is beyond question that Appellant was aware of her mesh-related injuries as early as April 2008, when she reported a "failed bladder lift" to Dr. Elser [ECF No. 59-2 at 27, A.42]; [ECF No. 59-3 at 5-6], and no later than May 21, 2008, when Dr. Elser implanted the TVT device to address her continued incontinence. [ECF No. 34, ¶ 4]. The undisputed facts also show that Appellant, through the exercise of reasonable diligence, should have known as early as May 21, 2008 and no later than November 13, 2015 that her injuries were caused by her eroded mesh. On May 21, 2008, Dr. Elser removed a portion of the TVT-O that had eroded into Appellant's urethra and informed Appellant of the mesh erosion. [ECF No. 59-3 at 12-13, A.50-51; *id.* at 30-31]. Dr. Elser informed Appellant that erosion was a potential complication associated with mesh implantation [*id.* at 11], and she discussed the possibility of recurrent erosion with Appellant in 2010 when Appellant presented with continued incontinence and pelvic pain. [*Id.* at 14-17]. And on November 13, 2015, after years of worsening symptoms, Dr. Valaitis performed an additional surgery to remove more of the eroded mesh from Appellant's urethra, but he was unable to successfully remove the mesh. [ECF No. 59-6 at 14]. Appellant cited the need for multiple corrective surgeries and the potential impossibility of removing the mesh as TVT-O complications about which Appellees failed to warn [ECF No. 34, ¶ 42]. Thus, when these events materialized she should have been put on notice of a claim. This undisputed evidence leads to only one reasonable conclusion: by

November 13, 2015 at the latest, Appellant possessed sufficient knowledge of her injuries and their cause to trigger her duty to investigate whether she had a cause of action.

These facts are analogous to those presented to the court in *Freire v. American Medical Systems, Inc.*, 2019 WL 1575187, at *1. In *Freire,* the plaintiff was implanted with a mesh sling in December 2005 and testified that she began experiencing symptoms immediately thereafter. *Freire*, 2019 WL 1575187, at *1. She underwent her first revision surgery in 2007 "after her physician told her that there was a problem with her mesh" and recommended removal due to erosion. *Id*. A partial removal was performed in August 2007, and the surgeon then implanted another manufacturer's mesh. *Id*. The plaintiff in *Freire*, however, did not file suit until 2013 as to the first defendant, and she amended her complaint to add the second defendant in 2017. *Id*. Both manufacturers moved for summary judgment under the Illinois statute of limitations. *Id*. The district court granted that motion, and its analysis is notable and persuasive here.

The *Freire* court explained that, "contrary to the plaintiffs' assertions, Ms. Freire's claims began to accrue when Ms. Freire knew or reasonably should have known that she was injured and that her injury was wrongfully caused—not when Ms. Freire became aware of her right to sue." *Id*. at *3. The record showed the plaintiff knew she was injured after her 2005 surgery, "[a]nd by 2007, she knew that her injury was wrongfully caused" because she knew the pain she experienced related to the mesh. *Id*. Further, "her physician told her in 2007 that there was an issue with her mesh implant leading up to her revision surgery," just like how Dr. Elser told Appellant that her mesh had shifted and eroded, "and she had multiple surgeries to address the issues with her mesh," at which point, "the burden was on Ms. Freire to inquire further as to the existence of a cause of action." *Id*. (citing *Orso*, 2009 WL 249235, at *6-7). Finding no genuine dispute of fact, the court ruled that the claims expired in 2009 and the lawsuit, filed in 2013, was untimely. *Id*.; *see also id*.

at *4 (also granting motion for summary judgment as to the second manufacturer and rejecting plaintiff's argument that she could not have reasonably known of her injury until she received her medical records because "the burden was on Ms. Freire to inquire further as to a cause of action against [the manufacturer] after she knew that her injury was wrongfully caused"). The district court concluded by explaining that "[p]laintiffs who choose to wait instead of diligently investigating will not be able to avoid summary judgment on statute of limitations grounds." *Id.* at *4 (citation omitted).[1]

The Illinois Supreme Court's decision in *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 421 N.E.2d 869, 874 (1981), also provides an instructive explanation of the cumulative effect of evidence in determining when a plaintiff's cause of action accrues. In *Witherell*, the plaintiff began to experience problems with her leg after being prescribed a birth control medication. *Id.* She was hospitalized for this condition in 1967 and again in 1972. *Id.* During her hospitalizations, one of her doctors told her that she may have blood clots in her leg. *Id.* Her mother and several other

---

[1] Contrary to Appellant's suggestion, the ruling in *Freire* is by no means unique or an outlier in pelvic mesh litigation. Other courts have recently granted summary judgment to Appellees, under similar factual circumstances, on the ground that the plaintiff's claims were not timely filed because they failed to engage in any additional investigation into the connection between their injuries and the devices in question. *See Kennedy v. Ethicon, Inc.*, No. 5:20-cv-00185, 2020 4050459, at *16-17 (E.D. Pa. July 20, 2020) (finding plaintiffs' claims against Appellees barred by Pennsylvania's two-year statute of limitations and rejecting plaintiff's argument that they could not have connected their injuries to a defect in the mesh because mesh erosion and bladder injury were known complications of mesh implantation); *Minzel v. Ethicon, Inc.*, 8:20CV13, 2020 WL 3128748, at *3 (D. Neb. June 12, 2020) (finding plaintiff's claims involving TVT-O barred by Nebraska's four-year statute of limitations, where plaintiff underwent two revision surgeries in 2005 but did not file suit until 2011, after seeing advertisements for mesh litigation); *Cutter v. Ethicon, Inc.*, No. 5:19-433-DCR, 2020 WL 109809 (E.D. Ky. Jan. 9, 2020) (finding plaintiff's claims against Appellees barred by Kentucky's one-year statute of limitations, where plaintiff underwent a revision surgery in 2008 to remove a portion of the mesh that had "come loose," underwent a second revision procedure in 2010 to remove a portion of the mesh that had "rolled up," and was recommended for a third revision procedure in March 2011, but did not file suit until September 2012).

women also told her that the medication could cause blood clots. *Id.* And notably, the package insert for the drug at issue listed thrombotic and thromboembotic disorders and thrombophlebitis as potential risks of taking the drug. *Id.* at 871-872. Yet her doctor reassured her that the medication was safe, and another physician told her that her leg pain was caused by a muscle condition. *Id.* at 871.

The plaintiff sued her doctors and the manufacturer of the drug in question in 1978. *Id.* at 870. Affirming the trial court's dismissal of the the drug manufacturer on statute-of-limitations grounds, the Supreme Court found that the plaintiff had more than enough evidence by 1972 to investigate whether her injuries were wrongfully caused:

> Given the severe difficulties plaintiff asserts she was having with her legs, the advice from her mother and others that the pill could cause blood clots, her statement that Dr. Taubert told her in 1967 and 1972 that she was having blood clots in her legs but that Dr. Weimer was insisting the problems were muscular, it is . . . inconceivable to us that a reasonable person would not have realized, at least by the time of plaintiff's second hospitalization in 1972, that she may not have been receiving proper diagnosis and treatment.

*Id.* at 874. The Court found that the plaintiff "knew or reasonably should have known that her injury resulted from actionable conduct by Ortho," even though her claimed injury was listed as a known risk in the drug's product information. *Id.* at 874.

Here, as in *Witherell*, it is inconceivable that a reasonable person in Appellant's position would not have known of the connection between her TVT-O and her injuries by November 2015. By that time she had told two doctors that she believed the TVT-O had failed, she had been implanted with another mesh device to address the TVT-O's failure, she had undergone two additional procedures to remove mesh that had eroded into her urethra, two doctors had informed her that that erosion was a risk associated with the mesh, and her mesh-related symptoms had continued to worsen even after the first revision procedure. Given these facts, it was unreasonable

as a matter of law for Appellant to wait another three years before filing suit. Appellant was on notice that her mesh was in a place it should not be and that her doctor could not fix this problem – complications that she later identified as product defects in her Complaint – and she had a duty to investigate whether her injuries were actionable. She failed to do so in the time provided under Illinois law.

**B.    There is no merit to Plaintiff's alleged "factual disputes" concerning the accrual of her claim.**

Appellant argues that the District Court committed two errors in its analysis of the statute of limitations. First, she asserts that her claims did not accrue until March 2018, when she spoke to a friend about pelvic mesh litigation, because she had no reason to believe prior to that date that her TVT-O implant was defective. Next, she claims that the District Court failed to view the evidence in her favor when it rejected her argument that her doctors' statements concerning her Ehlers-Danlos Syndrome tolled the statute of limitations. Neither of these arguments has any merit, and this Court should reject them just as the District Court did.

**i.    Appellant's claims accrued when she should have known of a connection between her TVT-O implant and her injuries, not when she became aware of Defendants' alleged tortious conduct.**

As discussed above, Illinois's discovery rule tolls the statute of limitations until the plaintiff knows or reasonably should know that her injuries were "wrongfully caused." *Golla*, 167 Ill.2d at 361. The interpretation of the phrase "wrongfully caused" is the primary focus of Appellant's arguments on appeal. Appellant interprets this phrase to mean that the statute of limitations did not begin to run until she became aware that her TVT-O could be defective. Throughout her brief, she contends that her interactions with her doctors between 2008 and 2015 could not have triggered the statute of limitations because none of her doctors told her that her mesh was defective. *See* Appellant's Br. at 9-10 ("Dr. Rother never told Ms. Stark that there was anything wrong with or

defective about the TVT-O mesh . . . .So, there was no reason for Ms. Stark to believe that her mesh erosions were caused by defective mesh."); *id.* at 10 ("Dr. Elser told Ms. Stark that the TVT-O mesh had eroded, but she did not tell Ms. Stark why the mesh implanted in her body had shifted."); *id.* at 11 ("Again, none of her treating physicians told her that the mesh was defective . . . ."); *id.* at 13 ("No doctor told her she had defective mesh in her body, and this Court should not expect her to suspect that her doctors were hiding something from her."); *id.* at 14 ("The District Court never directly addressed the failure of Ms. Stark's doctors to even suggest that the mesh was defective."). Instead, she argues that her claims did not accrue until March 2018, when a friend told her that she should contact an attorney specializing in mesh litigation. *See id.* at 11. ("Before that conversation, Ms. Stark had no reason to believe that she had been implanted with defective mesh."). But these arguments stem from a flawed premise that has been rejected by Illinois courts time and time again.[2]

The Illinois Supreme Court has explained that "wrongfully caused" refers to when an "injured party 'becomes possessed of sufficient information concerning his **injury and its cause** to put a reasonable person on inquiry to determine whether actionable conduct is involved.'" *Castello v. Kalis*, 352 Ill.App.3d 736, 744, 287 Ill.Dec. 815, 816 N.E.2d 782 (2004) (quoting *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415 (1981)) (emphasis added). At that point, "the burden is upon the plaintiff to inquire further as to the existence of a cause of action*." Freire v. American*

---

[2] Appellant makes the generalized assertion that physicians are susceptible to misleading patients about the potential sources of mesh-related complications. Appellant's Br. at 10-11. In support of this argument, Appellant cites a study by the British government published in July 2020, which was after the District Court's grant of summary judgment and is therefore not part of the record. *Id.* at 11 n. 3. Aside from the fact that Appellant made no argument that this Court should take judicial notice of this study, it is also irrelevant to Appellant's claims in this case, as the record demonstrates that her doctors warned her of the risks of mesh erosion and the need for additional corrective surgeries.

*Med. Sys.*, Inc., No. 2:13 C 9079, 2019 WL 1575187, at *3 (S.D. W. Va. Apr. 11, 2019) (citing *Hoffman v. Orthopedic Sys., Inc.*, 765 Ill.App.3d 1004, 1010 (Ill.App.Ct. 2002)).  "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace v. Kato*, 549 U.S. 384, 387, 391 (2007).

Contrary to Appellant's assertions, the phrase "wrongfully caused" "does **not** mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of cation." *Castello*, 352 Ill.App.3d at 744 (quoting *Young v. McKiegue*, 303 Ill.App.3d 380 (1999)) (emphasis added); *see Mitsias v. I-Flow Corp.*, 2011 IL App. (1st) 101126, at ¶ 24 ("Knowledge of 'wrongful cause' does not require knowledge on the part of plaintiff that the defendant's conduct fits the technical legal definition of negligence or that all the legal elements of a particular cause of action are otherwise satisfied.").  Indeed, "[t]he Supreme Court of Illinois . . . has rejected the notion that a cause of action accrues only when the defendant's negligent conduct is known." *Curtis*, 543 F. App'x at 903; *see Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864, 868 (1981) ("We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct.").  This Court has reached the same conclusion:  "The discovery rule as enunciated does not require that a plaintiff have actual knowledge of the liability of the manufacturer of an allegedly defective product before the limitations period begins."  *Curry v. A.H. Robins Co.*, 775 F.2d 212, 216 (7th Cir. 1985).  Therefore, the statute of limitations did not wait for Appellant to determine that Appellee's alleged tortious conduct in designing or drafting the warnings for the TVT-O caused her injuries.

Because Illinois law is clear that a plaintiff's claim accrues upon knowledge of an injury and its cause, and not upon knowledge of a cause of action, Appellant's attempt to align her case with cases decided under inapposite Arizona and California law is unavailing. *See* Appellant's Br. at 8-9 (citing *Staub v. Boston Scientific Corp.*, No. 2:13-CV-14904, 2015 WL 1198545, at *4 (S.D.W. Va. Mar.16, 2015), *Sanchez v. Boston Scientific Corp.*, No. 2:12-CV-05762, 2014 WL 202787, at *8 (S.D.W. Va. Jan. 17, 2014), and *Foreman v. Boston Scientific Corp.*, No. 2:13-CV-15591, 2015 WL 1276714, at *4 (S. D. W. Va. Mar. 19, 2015)). Appellant suggests that these cases are instructive because Arizona and California, like Illinois, are "inquiry notice" states. Appellant's Br. at 8-9, n. 1 & 2. But a review of these cases reveals that the standards governing the accrual of claims are not the same as in this case. For example, in *Staub*, the court found a factual dispute over whether the plaintiff's claims accrued on the date of her second revision surgery, where her doctor had told her that the procedure was "not uncommon" and "is not that big a deal." *Staub,* 2015 WL at 1198545, at *4. Based on these statements, the court determined that the plaintiff had no reason to know that her injuries were caused by the negligent conduct of the defendant. *Id.* Relying on *Mack v. A.H. Robins Co.*, 573 F. Supp. 2d 149 (D. Ariz. 1983), the defendant argued that the Arizona statute of limitations did not require the plaintiff to know about the defendant's wrongful conduct. *Staub*, 2015 WL 1198545, at *4. But the court rejected this argument and found that *Mack* was no longer good law in Arizona, relying instead on a more recent case in which the Arizona Court of Appeals held that a plaintiff's claims did not accrue until she knew that she was injured "by the *defendant's negligent act*." *Id.* at *4 (quoting *Anson v. American Motors Corp.*, 747 P.2d 581, 584 (Ariz. Ct. App. 1987)) (emphasis in original); *see also Sanchez*, 2014 WL 202787, at *5 (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (1988)) (holding that California statute of limitations is tolled until plaintiff "is aware of her injury and its **negligent**

**cause**.") (emphasis added). As explained above, controlling Illinois precedent renders *Staub* inapplicable here. *See Nolan*, 421 N.E.2d at 868; *see also In re Mirena IUD Prods. Liab. Litig.*, No. 13-MD-2434 (CS), 2015 WL 144214, at *3 n. 5 (S.D.N.Y. Jan. 9, 2015) (rejecting plaintiff's reliance on *Sanchez* in a case not governed by California law); *In re Mentor Corp.*, No. 4:13-cv-359 (Rinaldi), 2016 WL 4732931, at *3 (M.D. Ga. Sept. 9, 2016) (same). And tellingly, Appellant does not discuss the underlying facts of any of these cases or attempt to explain how they are analogous to this one.

Appellant's reliance on *Smith v. C.R. Bard, Inc.*, No. 2:16-CV-11817, 2018 WL 715448, at *3 (S.D.W. Va. Feb. 5, 2018), fares no better. In *Smith*, the defendant argued that the plaintiff's claims accrued when she first experienced symptoms related to her mesh implant, while the plaintiff argued that her claims did not accrue until years later when she learned about an advertisement for pelvic mesh litigation. *Id.* After reciting the applicable Illinois law interpreting the statute of limitations, the court concluded – with no further elaboration – that a genuine dispute of material fact existed as to the timeliness of the plaintiff's claims. *Id.* That unpublished, out-of-circuit district court decision is not binding on this Court. Nor is there anything in the *Smith* opinion (or Appellant's brief here) to suggest that the underlying facts of that case are similar to those in this one, such that a similar outcome is required. In short, *Smith* provides no support for Appellant's arguments in this case.

Here, the District Court rejected Appellant's contention that she could not have known that her mesh implant was defective until 2018 and correctly determined that under Illinois law, Appellant's "claim began to accrue when [Appellant] knew or should have known that she was injured and that her injury was wrongfully caused—not when she became aware of her right to sue." [ECF No. 73 at 9]. Because Appellant knew about her injury, an exact diagnosis was not

required to determine whether she was on notice of its exact wrongful cause.  *Orso*, 2009 WL 249235, at *5

### ii.     The District Court did not improperly weigh the facts or apply an incorrect analysis in granting summary judgment to Appellees.

In its Order granting summary judgment, the District Court also correctly rejected Appellant's assertion that her claims were timely filed because prior to 2018 she reasonably believed that her complications could have been caused by her Ehlers-Danlos Syndrome.  [ECF No. 73 at 11].  The District Court explained that none of Appellant's physicians had actually told her that Ehlers-Danlos caused her complications.  [*Id.*]  The District Court also concluded that even if Appellant initially believed this to be the case, that belief became unreasonable over time in the face of the other undisputed evidence in the record pointing to her eroded mesh.  [*Id.* at 12].

On appeal, Appellant argues that the District Court's analysis shows that it failed to view the record in the light most favorable to her, as it did not give proper weight to the evidence concerning the impact of her Ehlers-Danlos Syndrome.  But as the District Court correctly observed, Appellant's argument depends on reading evidence into the record that is not there and drawing *un*reasonable inferences from the actual record evidence, which is not allowed at summary judgment.

Appellant states throughout her brief that her physicians led her to believe that her Ehlers-Danlos Syndrome was the cause of her complications, but a review of the physicians' deposition testimony belies this assertion.  Dr. Roth testified that he "most likely" would have had a conversation with Appellant about "perhaps what happened in terms of the mesh complication here was because of her body's reaction to the mesh with the Ehlers-Danlos[.]" [ECF No. 68-2 at 10, A.73].  He also testified that he thought this condition would make it more difficult for

Appellant to heal. [*Id.* at 11, A.74]. But he did not consider this condition to be a contraindication for implantation with the TVT-O. [*Id.* at 15].

Likewise, Dr. Elser testified that she would have told Appellant that her Ehlers-Danlos Syndrome could have made her more prone to a mesh erosion. [ECF No. 68-3 at 12]. This was Dr. Elser's only substantive statement about Appellant's Ehlers-Danlos Syndrome.

Finally, Dr. Valaitis testified that Ehlers-Danlos Syndrome **could** have "played a role" in Appellant's mesh erosions, but she made clear that she never reached an opinion on whether it actually contributed to the erosions. [ECF No. 68-4 at 5, A.56].

Even viewed in the light most favorable to Appellant, this testimony shows, at best, that Appellants' physicians thought that her Ehlers-Danlos Syndrome could have made her mesh-related complications more likely to occur. This testimony cannot be reasonably interpreted as a conclusion by any of Appellant's physicians that Appellant's Ehlers-Danlos Syndrome itself caused any of her complications, let alone that the Syndrome was the sole cause of those injuries. To the contrary, Appellant specifically admitted that no one told her that her complications were caused by this condition:

> Q.     Did anyone tell you that Ehlers-Danlos was responsible for you having these issues?
>
> A.     I don't think so.

[ECF No. 68-1 at 12]. Thus, the District Court did not improperly weigh the evidence about this condition against Appellant in reviewing Appellee's summary judgment motion. Instead, the court simply took Appellant at her word.

The District Court also held that, even if Appellant's physicians had told her that her Ehlers-Danlos Syndrome had caused or contributed to her injuries, she still had an obligation to investigate the cause of her injuries given the other undisputed facts linking her injuries to the

TVT-O mesh. The Eleventh Circuit's decision in *Curtis* directly supports the District Court's holding. In granting summary judgment to the *Curtis* defendant, the lower court found that once the plaintiff possessed knowledge of her injury and its connection to the product in question, she "would have been able to begin an investigation to determine whether those injuries were caused by a problem with ObTape, **a problem with the implantation surgery, or some other problem**." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, Nos. 4:08-MD-2004 (CDL), 4:11-cv-5070, 2013 WL 503074, at *4 (M.D. Ga. Feb. 11, 2013) (applying Illinois law) (emphasis added). Clearly, the court was concerned not with whether the plaintiff's pelvic mesh implant was the only conceivable cause of her injuries but instead whether the record contained sufficient facts to put the plaintiff on notice that it could be a potential cause. The Eleventh Circuit approved of this holding when it found that the plaintiff's knowledge of a connection between the product and her injury triggered her duty to "begin her inquiry as to who manufactured her sling and whether her complications were due to a problem with the surgery **or** a defective sling." *Curtis*, 543 F. App'x at 904.

Appellant argues that *Curtis* is distinguishable from this case because the plaintiff there "lack[ed] … a reasonable alternative explanation" for her injuries [Appellant's Br. at 16], but this argument misreads both the evidence here and the holding in *Curtis*. The critical inquiry is not whether Appellant knew about her right to sue or whether she had ruled out every other potential cause of her injury. On the contrary, as the Illinois Supreme Court held in *Nolan* – a case that Appellant incorrectly claims supports her case – "once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights." *Nolan*, 421 N.E.2d at 868. If the statute of limitations was tolled until the plaintiff was absolutely certain that her injuries were caused by the defendant's wrongful conduct, "a party could wait to bring an action far beyond a

reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests." *Id.* "[S]uch a rule would seem contrary to the underlying purpose of statutes of limitations, which is to 'require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims.'" *Id.* (quoting *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 132, 334 N.E.2d 160 (1975)).

The court's analysis in *LaManna v. G.D. Searle and Co.*, 204 Ill.App.3d 211, 149 Ill.Dec. 474, 561 N.E.2d 1170, 1175 (1990), another cased relied on by Appellant, also supports the District Court's judgment. In *LaManna*, the appellate court held that the statute of limitations is not triggered at the point when the plaintiff became suspicious that her injuries might be wrongfully caused but instead when the plaintiff reasonably should have known that. *Id.* Appellant relies on this statement to argue that her suspicions about the causes of her injuries are insufficient to trigger the accrual of her claims. But while suspicion, on its own, may not be enough, the *LaManna* Court added that "the whole record must be considered to determine whether at some particular point the plaintiff reasonably should have known that her injury was wrongfully caused as a matter of law." *Id.* Relatedly, the court recognized that it is often a "compilation or a series of statements, events or circumstances and thoughts that changes mere suspicion to reasonably knowing that a patient's condition was wrongfully caused." *Id.* As applied here, the cumulative effect of Appellants' interactions with her physicians reasonably should have led her to conclude that her injuries were related to her TVT-O implant, even if this knowledge began as a mere suspicion in 2007 or 2008.

Finally, Appellant's reliance on the appellate decision in *Mitsias*, 959 N.E.2d 94, is misplaced. Based on the facts of that case, since "a reasonable person in plaintiff's position could not have been aware that her injury might have been wrongfully caused by a pain pump until the

summer of 2007, due to the lack of published information on the causal link between pain pumps and chondrolysis prior to that time," the court of appeals concluded that a question of fact existed as to whether plaintiffs' 2009 claim against the pain-pump manufacturer was timely. *Id*. at 113. Yet Illinois appellate courts have specifically recognized that the holding in *Mitsias* is limited to situations where one cause of an injury is "unknowable" due to a lack of scientific evidence. *See Carlson v. Fish*, 21056 IL App (1st) 140526, 391 Ill.Dec. 728, 738, 31 N.E. 404 (rejecting plaintiff's reliance on *Mitsias*, where cause of injury was not "scientifically unknowable"); *Heredia v. O'Brien*, 2015 IL App (1st) 141952, 393 Ill.Dec. 63, 33. N.E.3d 807, 817 ("[I]n reversing the circuit court's order in *Mitsias*, the appellate court explicitly limited the issue on review to whether the statute of limitations should be tolled where a plaintiff is aware of one potential wrongful cause of her injury but she does not yet know, '**nor could she** reasonably discover' a second potential wrongful cause, because '**the causal link was as yet unknown to science**.'") (emphasis added). Here, Appellant does not claim that the TVT-O's propensity to cause her specific injuries was "scientifically unknowable." Thus, *Mitsias* is inapposite.

In sum, the District Court did not erroneously weigh the record evidence against Appellant or require her to present a definite diagnosis of an alternative cause of her injury to prevent the running of the statute of limitations. Instead, applying settled Illinois legal principles and reviewing all of the relevant undisputed facts in context, the District Court properly concluded that Appellant possessed sufficient facts about the cause of her injuries by November 2015 to obligate her to investigate the possibility that her claims were actionable. These facts came in the form of Appellants' own admission that she believed prior to April 2008 that her TVT-O mesh had failed; Appellant's report of a "failed bladder lift" to Dr. Elser in April 2008; Dr. Elser's removal of eroded mesh from Appellant's urethra on May 21, 2008 and immediate report of the erosion to

27

Appellant; Appellant's knowledge that erosion was a risk associated with the mesh; Dr. Elser's statement to Appellant about the possibility of a recurrent erosion in 2010; and Dr. Valaitis's diagnosis and attempted removal of additional eroded mesh in 2015. Based on these facts, no reasonable factfinder could conclude that Appellant's claims did not accrue until 2018, when she spoke with a friend about pelvic mesh litigation. At best, Appellant's claims were filed 10 months too late. Because there is no genuine issue of **material** fact concerning the accrual of Appellant's claims, the District Court's grant of summary judgment to Appellees should be affirmed.

## II. Appellant does not challenge the District Court's conclusion that her strict liability claims are barred by Illinois's statute of repose.

Besides concluding that all of Appellant's claims were barred by the statute of limitations, the District Court held that Appellant's strict liability claims also and independently were barred by the statute of repose. [ECF No. 73 at 13, n. 9]. In her brief, Appellant presents no arguments challenging this aspect of the District Court's judgment. The District Court's ruling on the statute of repose was substantively correct and should be affirmed.

Illinois's statute of repose for product liability actions imposes an eight-year absolute bar to an action, running from the date of injury. 735 Ill. Comp. Stat. Ann. 5/13-213(d). "This eight year repose period is "an absolute cut-off point beyond which no action can be brought regardless of whether the plaintiff knows of the damage or not." *Dohra v. Alcon (Puerto Rico), Inc.*, No. 92 C 2624, 1994 WL 71449, at *2 (N.D. Ill. Mar. 3, 1994), *on recon.*, No. 92 C 2624, 1994 WL 395000 (N.D. Ill. July 26, 1994). For product liability actions, the date of "injury" is the date of exposure (for products like asbestos), ingestion (for prescription drugs), or implantation surgery (for medical devices); *Zimmerman v. Abbott Labs., Inc.*, 189 Ill. App. 3d 744, 745, 545 N.E.2d 547, 548 (1989); *Olson v. Owens-Corning Fiberglas Corp.*, 198 Ill. App. 3d 1039, 1044, 556 N.E.2d 716, 719 (1990). Here, the statute of repose began to run on February 15, 2007, the date

of Appellant's implant, and it expired eight years later on February 15, 2015, three years before Appellant filed suit. As a result, even if this Court reverses the District Court's ruling on the statute of limitations, it should still affirm the District Court's dismissal of Appellant's strict liability claims because they are barred by the statute of repose.

**CONCLUSION**

The undisputed facts of this case, even viewed in the light most favorable to Appellant, establish that Appellant should have known that her alleged injuries were caused by her mesh implant by May 21, 2008, and no later than November 13, 2015. Because Appellant did not file this lawsuit until September 27, 2018, her claims are barred by Illinois's two-year statute of limitations. Accordingly, this Court should affirm the District Court's grant of summary judgment to Appellees.

DATED:        September 4, 2020

/s/  Susanna M. Moldoveanu

Susanna M. Moldoveanu
Amy M. Pepke
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone:  (901) 680-7339
(901) 680-7324
susanna.moldoveanu@butlersnow.com
amy.pepke@butlersnow.com

Charles A. Byrd
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:  (601) 985-4492
chad.byrd@butlersnow.com

*Attorneys for Defendants-Appellees*
*Johnson & Johnson and Ethicon, Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1.  This brief complies with the type-volume limitation of Circuit Rule 32(c) because it contains 8,993 words, excluding the sections of the brief identified in Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type style requirements of Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point font Times New Roman.

   Dated: September 4, 2020

*/s/ Susanna M. Moldoveanu*
Susanna M. Moldoveanu

## PROOF OF SERVICE

I hereby certify that on September 4, 2020, the Brief of Defendants-Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. I further certify that that on September 4, 2020, two copies of the brief bound herein, were placed in the U.S. Mail to be delivered to the following counsel for each party:

Karen A. Enright
Thomas O. Plouff
Costello, McMahon, Gilbreth & Murphy, Ltd.
150 North Wacker Drive, Suite 3050
Chicago, Illinois 60606

*/s/  Susanna M. Moldoveanu*

Susanna M. Moldoveanu
Amy M. Pepke
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone:  (901) 680-7339
(901) 680-7324
susanna.moldoveanu@butlersnow.com
amy.pepke@butlersnow.com

Charles A. Byrd
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone:  (601) 985-4492
chad.byrd@butlersnow.com

*Attorneys for Defendants-Appellees*
*Johnson & Johnson and Ethicon, Inc.*